Appeal of **CONSOLIDATED WINDOW**                    **Docket No. 106.**
    **GLASS CO.**

The taxpayer acquired certain patents in 1913, and licensed several manufacturers to operate thereunder on a royalty basis. Thereafter, in 1919, the holders of other and senior patents secured court decrees enjoining the manufacturers from infringing their patents.  Arrangements were made whereby the holders of the older patents licensed the manufacturers to continue their business, which they did, paying the taxpayer reduced royalties until 1921.  *Held* that the taxpayer's patents were not rendered void or worthless by the court decrees in 1919, and that the taxpayer was not entitled to a deduction, in computing its 1919 income and profits taxes, for total loss of value of its patents.

Submitted November 24, 1924; decided January 16, 1925.

*J. Marvin Haynes, Esq.*, and *Wm. Franklin Marsh, C. P. A.*, for the taxpayer.

*J. D. Foley, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal came on for hearing on November 11, 1924, upon a deficiency of income and profits taxes for the years 1918, 1919, and 1920, determined by the Commissioner, in the aggregate amounting to $7,167.13. From the stipulation of facts, testimony of witnesses, and documentary evidence filed, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a Delaware corporation. In 1913 it acquired in exchange for $750,000 par value of its stock a group of patents covering the manufacture of window glass by what is known as the cylinder process. The stock so issued, and the patents so acquired, were of substantial value at that time. Shortly thereafter the taxpayer entered into contracts with certain manufacturers of window glass by which the manufacturers were licensed to make glass under said patents on a royalty basis.

2. Under these contracts each manufacturer agreed that during the life of the license granted it would manufacture glass only under the terms of the contract, and that it would not, directly or indirectly, contest the validity of the taxpayers patents, and that it would not in any legal proceedings set up or attempt to prove that it had not manufactured all its sheet glass under said patents.

3. The manufacturers proceeded to operate under the licenses so granted by the taxpayer, and in the years 1914–1919, inclusive, paid to the taxpayer royalties aggregating $578,483.61.

4. An equity suit was brought by the American Window Glass Co. and the Window Glass Machine Co. (hereinafter referred to as " the American Companies ") against certain of the taxpayer's licensees, on the ground that they were infringing certain patents held by the American companies which were senior to the taxpayer's patents. This suit resulted in a decree by the United States District Court for the Western District of Pennsylvania dated January 14, 1919, and, upon appeal, a mandate by the United States Circuit Court of Appeals for the third circuit, dated October 23, 1919, and other decrees and mandates, holding that the defendants were infringing the American Companies' patents, enjoining them from continuing to do so, and providing for an accounting of profits.

5. Thereafter, negotiations were had between the taxpayer, its licensees, and the American Companies at which plans for a consolidation were made. Pending such consolidation, the American Companies licensed the taxpayer's licensees, from month to month, to continue the manufacture of window glass. The taxpayer reduced the royalties payable to it under the contracts with its licensees to approximately 40 per cent of those provided for in the contracts. Under these arrangements the licensees continued to operate and to pay the taxpayer the reduced royalties until some time in 1921, when a merger was brought about in the formation of the Interstate Window Glass Co., and the taxpayer went into dissolution.

6. The taxpayer in its income and profits tax return for 1919 claimed a deduction for loss due to the destruction of value of its patents through the court decrees. The loss claimed was $461,072.01.

being the entire cost of the patents, alleged to be $750,000 reduced by the depreciation theretofore written off against them. The Commissioner disallowed this deduction, and accordingly determined deficiences in tax against the taxpayer as follows: for 1918, $2,929.93; for 1919, $3,077.76; and for 1920, $1,159,44. His letter of determination was mailed on July 5, 1924, and the taxpayer appealed to this Board by a petition filed September 3, 1924.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

IVINS: The taxpayer in 1913 acquired certain patents upon the manufacture of glass by the so-called cylinder method. In exchange for these patents it issued its stock to a par value of $750,000. At the hearing it adduced evidence sufficient to constitute *prima facie* proof that the patents so acquired had a large value at the time of acquisition, but for reasons which will hereinafter appear, it becomes unnecessary for us to determine that value. Under these patents it licensed certain manufacturing companies to operate on a royalty basis. It collected undiminished royalties under the license agreements in the years 1914–1919. But suits in equity were brought against the licensees by the American Window Glass Co. and the Window Glass Machine Co. (hereinafter referred to as " the American Companies ") to enjoin their operations on the ground that they were infringing certain patents of the American Companies which were senior to the taxpayer's patents. In 1919, the United States District Court and the United States Circuit Court of Appeals upheld the contentions of the American Companies to an extent sufficient to result in decrees enjoining the taxpayer's licensees from further manufacturing glass without the consent of the American Companies. But by arrangement between the taxpayer, its licensees, and the American Companies, the American Companies, for certain consideration, licensed the taxpayer's licensees to continue their operations from month to month. Simultaneously, the taxpayer reduced the royalties it should collect from its licensees to 40 per cent of the amounts provided for in the original license agreements. This arrangement continued and the taxpayer collected royalties at the reduced rates from its licensees until 1921, when the taxpayer went into liquidation.

The taxpayer contends that the decrees of the courts in 1919 rendered its patents valueless, and that it is entitled to a deduction for loss upon its 1919 return of the cost of its patents, diminished by depreciation written off. The Commissioner, in his letter of determination, took the position that the loss in 1919 was not total, since the taxpayer continued to receive diminished royalties thereafter, that the transaction was not closed in 1919, and that therefore any deduction for loss was premature at that time. But at the hearing before this Board, the Commissioner's counsel shifted his ground and maintained that the decrees of the courts rendered the taxpayer's patents void *ab initio*, that the stock issued for them was worthless

from the beginning, that the taxpayer never had anything to lose, and consequently lost nothing and was entitled to no deduction for loss in 1919.

We think that the arguments for both parties at the hearing were faulty, but that the original position taken by the Commissioner in his letter of determination was sound.

The patents acquired by the taxpayer were duly issued by the patent office and presumably were valid. They entitled the taxpayer to restrain everybody from manufacturing glass by the particular means described therein. The court decrees did not declare them invalid—did not even mention them—nor did the opinion of the Circuit Court of Appeals, *Consolidated Window Glass Co.* v. *Window Glass Machine Co.*, 261 Fed. 362. Those decrees were merely to the effect that the taxpayer's licensees were infringing the monopoly of the American Companies under older patents, and they were enjoined from continuing to do so without the consent of the American Companies. The taxpayer was still at liberty to enjoin anybody from manufacturing by *its* processes, even though he might be licensed by the American Companies to operate under *theirs*.

The licensees procured from the American Companies the right, on making certain payments, to go on with their business—but they continued to operate under their license agreements with the taxpayer, to manufacture by processes patented by the taxpayer, and to pay the taxpayer royalties for the privilege—reduced royalties, to be sure, but nevertheless substantial.

It may be that the decrees of the courts reduced the value of the patents in 1919, but they certainly did not render them worthless at that time. We are satisfied that the taxpayer's deduction for *loss* in 1919 was properly disallowed and that the determination of the Commissioner on that basis, and the deficiency accordingly found, should be approved.